IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALVIN L. HINTZ, JR., | ) | |
| | ) | |
| Plaintiff, | ) | FILED |
| | ) | March 11, 2008    TG |
| | ) | No.   08cv1444 |
| | ) | Judge DOW Jr. |
| THE PRUDENTIAL INSURANCE | ) | Magistrate Judge VALDEZ |
| COMPANY OF AMERICA and LONG TERM | ) | |
| DISABILITY COVERAGE FOR CLASS 1: | ) | |
| U.S.- EXECUTIVES OF CCL CUSTOM | ) | |
| MANUFACTURING, INC. | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, ALVIN HINTZ, by his attorneys, MARCIE E. GOLDBLOOM and DALEY, DEBOFSKY & BRYANT, and complaining against the defendant, states:

### *Jurisdiction and Venue*

1.     Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§ 1132(e)(1) and 1132(f).  Those provisions give the district courts jurisdiction to hear civil actions brought to recover benefits due under the terms of an employee welfare benefit plan which, in this case, consists of a group long term disability insurance plan underwritten by The Prudential Insurance Company of America ("Prudential"), for the benefit of employees of CCL Custom Manufacturing, Inc.  In addition, this action may be brought before this court pursuant to 28 U.S.C. § 1331, which gives the district court jurisdiction over actions that arise under the laws of the United States.

2.     The ERISA statute provides, at 29 U.S.C. § 1133, a mechanism for administrative or internal appeal of benefit denials.  Those avenues of appeal have been exhausted.

3.      Venue is proper in the Northern District of Illinois, where the Plan was purchased and where CCL (later KIK) is located.  29 U.S.C. § 1132(e)(2), 28 U.S.C. § 1391.

### Nature of Action

4.      This is a claim seeking an award to plaintiff of disability benefits pursuant to the policy of insurance, Policy # G-41356-IL underwritten by the Prudential Insurance Company of America to provide long term disability insurance benefits to employees of CCL Custom Manufacturing, Inc. (a true and correct copy of the disability policy is attached hereto and by that reference incorporated herein as Exhibit "A").  This action, seeking recovery of benefits, is brought pursuant to § 502(a)(1)(B) of ERISA (29 U.S.C. § 1132(a)(1)(B)).

### The Parties

5.      Alvin Hintz ("Hintz" or "Plaintiff") at all times relevant was a resident of Danville, Illinois, was employed in Rosemont, Illinois, and the events, transactions, and occurrences relevant to Hintz's claim of disability took place within the Northern District of Illinois.

6.      The Prudential Insurance Company of America ("Prudential" or "Defendant") is an insurer of long term disability benefits. At all times relevant hereto, Prudential was doing business throughout the United States and within the Northern District of Illinois.

7.      At all times relevant hereto, the Long Term Disability Coverage for All Employees classified by the contract holder as Officers, Directors, General Managers, and their management level direct reports located in United States of CCL Custom Manufacturing, Inc. ("Plan") constituted an "employee welfare benefit plan" as defined by 29 U.S.C. § 1002(1); and incident to his

employment, Hintz received coverage under the Plan as a "participant" as defined by 29 U.S.C. § 1002(7). This claim relates to benefits under the foregoing Plan.

*Statement of Facts*

8.     Hintz was employed as the Director of Information Systems at CCL Custom Manufacturing in Rosemont, Illinois.

9.     Hintz underwent coronary bypass surgery in 1998 and leg revascularization in April 2004 due to peripheral artery disease. Hintz continued to suffer complications from his impairments and the cardiovascular procedures, with severe chronic pain and swelling in his legs and feet and chronic fatigue. Hintz also suffered from uncontrolled Type II diabetes mellitus, which exacerbated his risk of further cardiovascular events. He has also been found to have distal bilateral carotid artery stenosis, history of TIAs in the left MCA territory, coronary artery disease, peripheral vascular disease, hypertension, hyperlipidemia and probable obstructive sleep apnea.

10.     Hintz began working at CCL Custom Manufacturing ("CCL") on January 10, 1995 and in the later years of his employment was able to work despite the worsening of his severe medical conditions, as CCL made substantial efforts to accommodate Hintz's limitations. These accommodations included reduced hours, time off for physical therapy and rest, opportunities to work from home, reduced travel and business meeting participation, and concessions in work dress to accommodate recovery from surgeries and therapy.

11.     In May 2005, CCL was purchased by KIK Custom Products, Inc. ("KIK"), which is also located in Rosemont, Illinois

12. While working at CCL, decisions regarding Hintz's employment, including decisions to accommodate his medical conditions, were made by the Vice President of Human Resources and Vice President of Finance. When KIK purchased CCL in May 2005, those decisions transferred to KIK management. Hintz continued to work under medical restrictions, as he had for the past few years, but was abruptly involuntarily terminated by KIK approximately three months after it had purchased CCL, on August 8, 2005.

13. Hintz applied for long term disability benefits under the terms of the Plan, which states, in relevant part:

"You are disabled when Prudential determines that:

- You are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; and

- You have a 20% or more loss in your indexed monthly earnings due to that sickness or injury."

(Exhibit A at 10).

14. In addition, Hintz applied for and was awarded benefits from the Social Security Administration, with an onset date of August 8, 2005. The Social Security Administration defines disability as "an inability to perform substantial gainful activity." 42 U.S.C. §423(d)(1)(A). (a true and correct copy of the Social Security award letter is attached hereto and by that reference incorporated herein as Exhibit "B").

15. Although Hintz provided Prudential with substantial medical evidence supporting his diagnosis and condition, Prudential denied Hintz long term disability benefits on June 27, 2006,

asserting that Hintz did not meet the definition of Total Disability prior to August 9, 2005, when his long term disability coverage ceased.

16.    Hintz subsequently appealed Prudential's determination twice, including with each appeal the opinions of his treating physicians which refuted Prudential's assertion that Hintz's impairments did not render him disabled prior to August 9, 2005. Hintz also submitted statements from his supervisors, human resources executives and other colleagues at CCL who acknowledged that the company had consistently accommodated Hintz's medical impairments prior to his involuntary termination. Regardless, Prudential denied both appeals on January 25, 2007 and August 30, 2007, respectively.

17.    On January 17, 2008, Hintz submitted a letter to Prudential, giving it the opportunity to Reconsider his case before filing suit and additionally providing a letter from the Senior Vice President of Human Resources at CCL who confirmed that while employed at CCL, Hintz suffered from many medical issues which CCL accommodated. However, by letter dated January 31, 2008, Prudential notified Hintz that it would not reconsider his claim.

18.    All avenues of administrative appeal or review to Prudential have now been exhausted; therefore this matter is ripe for judicial review.

19.    The evidence submitted to Prudential establishes Hintz's entitlement to payment of long term disability benefits in the amount of $5,866.20 monthly, minus a set-off for Social Security disability benefits. Such benefits should be paid retroactive to February 8, 2006 (the date Hintz's benefits would become effective following the 180-day elimination period) and should continue

under the terms and conditions of the Plan as long as he continues to meet the policy conditions for benefits.

WHEREFORE, plaintiff prays for the following relief:

A.    That the court enter judgment in plaintiff's favor and against the defendant and that the court order the defendant to pay long term disability income benefits to plaintiff in an amount equal to the contractual amount of benefits to which he is entitled;

B.    That the court order the defendant to pay plaintiff prejudgment interest on all benefits that have accrued prior to the date of judgment;

C.    That the court order defendant to continue paying plaintiff benefits for as long as he continues to meet the policy conditions for benefits;

D.    That the court award plaintiff his attorney's fees pursuant to 29 U.S.C. § 1132(g); and

E.    That plaintiff recover any and all other relief to which he may be entitled, as well as the costs of suit.

Respectfully Submitted

s/ Marcie E. Goldbloom
Marcie E. Goldbloom
One of the Plaintiff's Attorneys

Daley, DeBofsky and Bryant
55 W Monroe St Ste 2440
Chicago, Illinois 60603
(312) 372-5200 / FAX (312) 372-2778

**CERTIFICATE OF SERVICE**

TO:    The Prudential Insurance Company of America        KIK Custom Products, Inc.
       c/o Illinois Division of Insurance                Attn: Human Resources Department
       James R. Thompson Center                          780 West Army Trail Road, Suite 209
       100 W. Randolph St., Suite 9-301                  Carol Stream, IL 60188
       Chicago, IL 60601


       The undersigned attorney hereby certifies that on March 11, 2008, she electronically filed the foregoing COMPLAINT with the Clerk of the Court using the CMF/ECF filing system, which sent notice of such filing to: N/A, and that I hereby certify that I have mailed via the United States Postal Service the document to the following non-CMF/ECF participants: The Prudential Insurance Company of America and KIK Custom Products, Inc.


                                                s/ Marcie E. Goldbloom
                                                Marcie E. Goldbloom
Daley, DeBofsky & Bryant                        Attorney for Plaintiff
55 West Monroe St., Suite 2440                  Alvin Hintz
Chicago, Illinois 60603                         mgoldbloom@ddbchicago.com
(312) 372-5200; (312) 372-2778 *fax*

- 7 -

March 11, 2008    TG
08cv1444
Judge DOW Jr.
Magistrate Judge VALDEZ

# CCL Custom Manufacturing, Inc.

## *Class 1: US-Executives*

Long Term Disability Coverage



# Benefit Highlights

## LONG TERM DISABILITY PLAN

This long term disability plan provides financial protection for you by paying a portion of your income while you have a long period of disability.  The amount you receive is based on the amount you earned before your disability began.  In some cases, you can receive disability payments even if you work while you are disabled.  Benefits start after the elimination period.

| | |
|---|---|
| **Program Date:** | April 1, 2002 |
| **Contract Holder:** | CCL CUSTOM MANUFACTURING, INC. |
| **Group Contract Number:** | G-41356-IL |
| **Covered Classes:** | All Employees classified by the contract holder as Officers, Directors, General Managers, and their management level direct reports located in United States. |
| **Minimum Hours Requirement:** | Employees must be working at least 30 hours per week. |
| **Employment Waiting Period:** | You may need to work for your Employer for a continuous period before you become eligible for the plan.  The period must be agreed upon by your Employer and Prudential. |
| | Your Employer will let you know about this waiting period. |
| **Elimination Period:** | 180 days. |
| | **Benefits begin the day after the Elimination Period is completed.** |
| **Monthly Benefit:** | 60% of your monthly earnings, but not more than $10,000.00. |
| | Your benefit may be reduced by deductible sources of income and disability earnings.  Some disabilities may not be covered or may be limited under this coverage. |

**Maximum Period of Benefits:**

| Your Age on Date Disability Begins | Your Maximum Benefit Duration |
|---|---|
| Under age 61 | To your normal retirement age*, but not less than 60 months |
| Age 61 | To your normal retirement age*, but not less than 48 months |
| Age 62 | To your normal retirement age*, but not less than 42 months |
| Age 63 | To your normal retirement age*, but not less than 36 months |
| Age 64 | To your normal retirement age*, but not less than 30 months |
| Age 65 | 24 months |
| Age 66 | 21 months |
| Age 67 | 18 months |
| Age 68 | 15 months |
| Age 69 and over | 12 months |

**\*Your normal retirement age is your retirement age under the Social Security Act where retirement age depends on your year of birth.**

83500
CBH-LTD-1001

(41356-9)

No contributions are required for your coverage while you are receiving payments under this plan.

**Cost of Coverage:** The long term disability plan is provided to you on non-contributory basis. The entire cost of your coverage under the plan is being paid by your Employer.

**The above items are only highlights of your coverage.  For a full description please read this entire Group Insurance Certificate.**

# Table of Contents

BENEFIT HIGHLIGHTS - LONG TERM DISABILITY PLAN ................................................................. 1

CERTIFICATE OF COVERAGE ............................................................................................... 4

GENERAL PROVISIONS.......................................................................................................... 5

LONG TERM DISABILITY COVERAGE - GENERAL INFORMATION................................................ 9

LONG TERM DISABILITY COVERAGE - BENEFIT INFORMATION .............................................. 10

LONG TERM DISABILITY - OTHER BENEFITS ........................................................................ 21

LONG TERM DISABILITY - CLAIM INFORMATION................................................................... 22

LONG TERM DISABILITY - OTHER SERVICES ........................................................................ 25

LONG TERM DISABILITY - OTHER SERVICES ........................................................................ 26

GLOSSARY.......................................................................................................................... 27

SUMMARY PLAN DESCRIPTION........................................................................................... 31

The Prudential Insurance Company of America

# Certificate of Coverage

The Prudential Insurance Company of America (referred to as Prudential) welcomes you to the plan.

This is your Certificate of Coverage as long as you are eligible for coverage and you meet the requirements for becoming insured. You will want to read this certificate and keep it in a safe place.

Prudential has written this certificate in booklet format to be understandable to you. If you should have any questions about the content or provisions, please consult Prudential's claims paying office. Prudential will assist you in any way to help you understand your benefits.

The benefits described in this Certificate of Coverage are subject in every way to the entire Group Contract which includes this Group Insurance Certificate.

## Prudential's Address

The Prudential Insurance Company of America
290 West Mount Pleasant Avenue
Livingston, New Jersey 07039

# General Provisions

## What Is the Certificate?

This certificate is a written document prepared by Prudential which tells you:

- the coverage to which you may be entitled;

- to whom Prudential will make a payment; and

- the limitations, exclusions and requirements that apply within a plan.

## General Definitions used throughout this certificate include:

*You* means a person who is eligible for Prudential coverage.

*We, us, and our* means The Prudential Insurance Company of America.

*Employee* means a person who is in active employment with the Employer for the minimum hours requirement.

*Insured* means any person covered under a coverage.

*Plan* means a line of coverage under the Group Contract.

## When Are You Eligible for Coverage?

If you are working for your Employer in a covered class, the date you are eligible for coverage is the later of:

- the plan's program date; and

- the day after you complete your *employment waiting period*.

*Employment waiting period* means the continuous period of time that you must be in a covered class before you are eligible for coverage under a plan. The period must be agreed upon by the Employer and Prudential.

## When Does Your Coverage Begin?

When your Employer pays the entire cost of your coverage under a plan, you will be covered at 12:01 a.m. on the date you are eligible for coverage, provided you are in *active employment* on that date.

When you and your Employer share the cost of your coverage under a plan, you will be covered at 12:01 a.m. on the latest of:

- the date you are eligible for coverage, if you apply for insurance on or before that date;

83500
CGP-1001

(S-1) (41356-9)

- the date you apply for insurance, if you apply within 31 days after your eligibility date; or

- the date Prudential approves your application, if *evidence of insurability* is required.

Evidence of insurability is required if you:

- are a late applicant, which means you apply for coverage more than 31 days after the date you are eligible for coverage; or

- voluntarily canceled your coverage and are reapplying; or

- apply after any of your coverage ended because you did not pay a required contribution; or

- have not met a previous evidence requirement to become insured under any plan the Employer has with Prudential.

An evidence of insurability form can be obtained from your Employer.

*Active employment* means you are working for your Employer for earnings that are paid regularly and that you are performing the material and substantial duties of your regular occupation.  You must be working at least 30 hours per week.

Your worksite must be:

- your Employer's usual place of business;

- an alternate work site at the direction of your Employer other than your home unless clear specific expectations and duties are documented; or

- a location to which your job requires you to travel.

Normal vacation is considered active employment.

Temporary and seasonal workers are excluded from coverage.

Individuals whose employment status is being continued under a severance or termination agreement will not be considered in active employment.

*Evidence of insurability* means a statement of your medical history which Prudential will use to determine if you are approved for coverage.  Evidence of insurability will be provided at your own expense.

## What If You Are Absent from Work on the Date Your Coverage Would Normally Begin?

If you are absent from work due to injury, sickness, temporary layoff or leave of absence your coverage will begin on the date you return to active employment.

## Once Your Coverage Begins, What Happens If You Are Temporarily Not Working?

If you are on a temporary **layoff**, and if premium is paid, you will be covered to the end of the month following the month in which your temporary layoff begins.

If you are on a *leave of absence*, and if premium is paid, you will be covered to the end of the month following the month in which your leave of absence begins.

With respect to leave under the federal Family and Medical Leave Act of 1993 (FMLA) or similar state law, continuation of coverage under the plan during such leave will be governed by your Employer's policies regarding continuation of such coverage for non-FMLA leave purposes and any applicable law.  Continuation of such coverage pursuant to this provision is contingent upon Prudential's timely receipt of premium payments and written confirmation of your FMLA leave by your Employer.

If you are working less than 30 hours per week, for reasons other than disability, and if premium is paid, you will be covered to the end of the month following the month in which your reduced hours begin.

*Layoff* or *leave of absence* means you are temporarily absent from active employment for a period of time that has been agreed to in advance in writing by your Employer, other than for reasons in connection with any severance or termination agreement.  Your normal vacation time, any period of disability or FMLA leave is not considered a temporary layoff.

## When Will Changes to Your Coverage Take Effect?

Once your coverage begins, any increased or additional coverage will take effect immediately upon the effective date of the change, if you are in active employment or if you are on a covered layoff or leave of absence.  If you are not in active employment due to injury or sickness, any increased or additional coverage will begin on the date you return to active employment.  An increase in your long term disability coverage may be subject to a pre-existing condition limitation as described in the plan.  Any decrease in coverage will take effect immediately upon the effective date of the change.  Neither an increase nor a decrease in coverage will affect a *payable claim* that occurs prior to the increase or decrease.

*Payable claim* means a claim for which Prudential is liable under the terms of the Group Contract.

## When Does Your Coverage End?

Your coverage under the Group Contract or a plan ends on the earliest of:

- the date the Group Contract or a plan is canceled;

- the date you are no longer a member of the covered classes;

- the date your covered class is no longer covered;

- the last day of the period for which you made any required contributions;

83500
CGP-1001

(S-1) (41356-9)

- the last day you are in active employment except as provided under the temporary absence from work provisions; or

- the date you are no longer in active employment due to a disability that is not covered under the plan.

## Does the Coverage under a Plan Replace or Affect any Workers' Compensation or State Disability Insurance?

The coverage under a plan does not replace or affect the requirements for coverage by workers' compensation or state disability insurance.

## Does Your Employer Act as Prudential's Agent?

For purposes of the Group Contract, your Employer acts on its own behalf. Under no circumstances will your Employer be deemed the agent of Prudential.

## Does This Certificate Address Any Rights to Other Benefits or Affect Your Employment with Your Employer?

This certificate sets forth only the terms and conditions for coverage and receipt of benefits for Long Term Disability. It does not address and does not confer any rights, or take away any rights, if any, to other benefits or employment with your Employer. Your rights, if any, to other benefits or employment are solely determined by your Employer. Prudential plays no role in determining, interpreting, or applying any such rights that may or may not exist.

## How Can Statements Made in Your Application for this Coverage be Used?

Prudential considers any statements you or your Employer make in a signed application for coverage a representation and not a warranty. If any of the statements you or your Employer make are not complete and/or not true at the time they are made, we can:

- reduce or deny any claim; or

- cancel your coverage from the original effective date.

If a statement is used in a contest, a copy of that statement will be furnished to you or, in the event of your death or incapacity, to your eligible survivor or personal representative.

A statement will not be contested after the amount of insurance has been in force, before the contest, for at least two years during your lifetime.

We will use only statements made in a signed application as a basis for doing this.

If the Employer gives us information about you that is incorrect, we will:

- use the facts to decide whether you have coverage under the plan and in what amounts; and

- make a fair adjustment of the premium.

# Long Term Disability Coverage

## GENERAL INFORMATION

### Who Is in the Covered Class(es) for the Insurance?

The Covered Classes are:

All Employees classified by the contract holder as Officers, Directors, General Managers, and their management level direct reports located in United States.

### How Many Hours Must You Work to be Eligible for Coverage?

You must be working at least 30 hours per week.

### What Is Your Employment Waiting Period?

You may need to work for your Employer for a continuous period before you become eligible for the coverage.  The period must be agreed upon by your Employer and Prudential.

Your Employer will let you know about this waiting period.

### Who Pays for Your Coverage?

Your coverage is paid for by your Employer.

# Long Term Disability Coverage

## BENEFIT INFORMATION

### How Does Prudential Define Disability?

You are disabled when Prudential determines that:

- you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; and

- you have a 20% or more loss in your indexed monthly earnings due to that sickness or injury.

The loss of a professional or occupational license or certification does not, in itself, constitute disability.

We may require you to be examined by doctors, other medical practitioners or vocational experts of our choice. Prudential will pay for these examinations. We can require examinations as often as it is reasonable to do so. We may also require you to be interviewed by an authorized Prudential Representative. Refusal to be examined or interviewed may result in denial or termination of your claim.

*Material and substantial duties* means duties that:

- are normally required for the performance of your regular occupation; and

- cannot be reasonably omitted or modified, except that if you are required to work on average in excess of 40 hours per week, Prudential will consider you able to perform that requirement if you are working or have the capacity to work 40 hours per week.

*Regular occupation* means the occupation you are routinely performing when your disability begins. Prudential will look at your occupation as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location.

*Sickness* means any disorder of your body or mind, but not an injury; pregnancy including abortion, miscarriage or childbirth. Disability must begin while you are covered under the plan.

*Injury* means a bodily injury that is the direct result of an accident, is independent of sickness, and occurs while you are covered under the plan. Injury which occurs before you are covered under the plan will be treated as a sickness. Disability must begin while you are covered under the plan.

*Indexed monthly earnings* means your monthly earnings as adjusted on each July 1 provided you were disabled for all of the 12 months before that date. Your monthly earnings will be adjusted on that date by the lesser of 10% or the current annual percentage increase in the Consumer Price Index. Your indexed monthly earnings may increase or remain the same, but will never decrease.

The Consumer Price Index (CPI-W) is published by the U.S. Department of Labor. Prudential reserves the right to use some other similar measurement if the Department of Labor changes or stops publishing the CPI-W.

Indexing is only used to determine your percentage of lost earnings while you are disabled and working.

GRP 99645-14

## How Long Must You Be Disabled Before Your Benefits Begin?

You must be continuously disabled through your *elimination period*. Prudential will treat your disability as continuous if your disability stops for 30 days or less during the elimination period. The days that you are not disabled will not count toward your elimination period.

Your elimination period is 180 days.

*Elimination period* means a period of continuous disability which must be satisfied before you are eligible to receive benefits from Prudential.

## Can You Satisfy Your Elimination Period If You Are Working?

Yes, provided you meet the definition of disability.

## When Will You Begin to Receive Disability Payments?

You will begin to receive payments when we approve your claim, providing the elimination period has been met. We will send you a payment each month for any period for which Prudential is liable.

## How Much Will Prudential Pay If You Are Disabled and Not Working?

We will follow this process to figure out your *monthly payment*:

1. Multiply your monthly earnings by 60%.

2. The maximum *monthly benefit* is $10,000.00.

3. Compare the answer in item 1 with the maximum monthly benefit. The lesser of these two amounts is your *gross disability payment*.

4. Subtract from your gross disability payment any *deductible sources of income*.

That amount figured in item 4 is your monthly payment.

After the elimination period, if you are disabled for less than 1 month, we will send you 1/30th of your payment for each day of disability.

*Monthly payment* means your payment after any deductible sources of income have been subtracted from your gross disability payment.

*Monthly benefit* means the total benefit amount for which you are insured under this plan subject to the maximum benefit.

*Gross disability payment* means the benefit amount before Prudential subtracts deductible sources of income and disability earnings.

*Deductible sources of income* means income from deductible sources listed in the plan that you receive or are entitled to receive while you are disabled. This income will be subtracted from your gross disability payment.

## What Are Your Monthly Earnings?

Monthly earnings means your gross monthly income from your Employer in effect just prior to your date of disability. It does not include income received from commissions, bonuses, overtime pay, any other extra compensation, or income received from sources other than your Employer.

## What Will We Use to Determine Monthly Earnings If You Become Disabled During a Covered Layoff or Leave of Absence?

If you become disabled while you are on a covered layoff or leave of absence, we will use your monthly earnings from your Employer in effect just prior to the date your absence begins.

## How Much Will Prudential Pay If You Work While You Are Disabled?

We will send you the monthly payment if you are disabled and your monthly *disability earnings*, if any, are less than 20% of your indexed monthly earnings due to the same sickness or injury.

If you are disabled and your monthly disability earnings are 20% or more of your indexed monthly earnings, due to the same sickness or injury, Prudential will figure your payment as follows:

During the first 12 months of payments, while working, your monthly payment will not be reduced as long as disability earnings plus the gross disability payment does not exceed 100% of indexed monthly earnings.

1.    Add your monthly disability earnings to your gross disability payment.

2.    Compare the answer in item 1 to your indexed monthly earnings.

If the answer from item 1 is less than or equal to 100% of your indexed monthly earnings, Prudential will not further reduce your monthly payment.

If the answer from item 1 is more than 100% of your indexed monthly earnings, Prudential will subtract the amount over 100% from your monthly payment.

After 12 months of payments, while working, you will receive payments based on the percentage of income you are losing due to your disability.

1.    Subtract your disability earnings from your indexed monthly earnings.

2.    Divide the answer in item 1 by your indexed monthly earnings. This is your percentage of lost earnings.

3.    Multiply your monthly payment by the answer in item 2.

This is the amount Prudential will pay you each month.

If your monthly disability earnings exceed 80% of your indexed monthly earnings, Prudential will stop sending you payments and your claim will end.

Prudential may require you to send proof of your monthly disability earnings on a monthly basis. We will adjust your payment based on your monthly disability earnings.

As part of your proof of disability earnings, we can require that you send us appropriate financial records, including copies of your IRS federal income tax return, W-2's and 1099's, which we believe are necessary to substantiate your income.

*Disability earnings* means the earnings which you receive while you are disabled and working, plus the earnings you could receive if you were working to your greatest extent possible. This would be, based on your restrictions and limitations, the greatest extent of work you are able to do in your regular occupation, that is reasonably available.

Salary continuance paid to supplement your disability earnings will not be considered payment for work performed.

## What Happens If Your Disability Earnings Fluctuate?

If your disability earnings are expected to fluctuate widely from month to month, Prudential may average your disability earnings over the most recent 3 months to determine if your claim should continue subject to all other terms and conditions in the plan.

If Prudential averages your disability earnings, we will terminate your claim if the average of your disability earnings from the last 3 months exceeds 80% of indexed monthly earnings.

We will not pay you for any month during which disability earnings exceed the above amount.

## What Are Deductible Sources of Income?

Prudential will deduct from your gross disability payment the following deductible sources of income:

1.  The amount that you receive or are entitled to receive as loss of time benefits under:

    (a)  a workers' compensation law;

    (b)  an occupational disease law; or

    (c)  any other *act* or *law* with similar intent.

2.  The amount that you receive or are entitled to receive as loss of time disability income payments under any:

    (a)  state compulsory benefit act or law;

    (b)  automobile liability insurance policy;

    (c)  other group insurance plan; or

    (d)  governmental retirement system as the result of your job with your Employer.

3.  The amount that you, your spouse and children receive or are entitled to receive as loss of time disability payments because of your disability under:

   (a)  the United States Social Security Act;

   (b)  the Railroad Retirement Act;

   (c)  the Canada Pension Plan;

   (d)  the Quebec Pension Plan; or

   (e)  any similar *plan* or *act*.

Amounts paid to your former spouse or to your children living with such spouse will not be included.

4.  The amount that you receive as retirement payments or the amount your spouse and children receive as retirement payments because you are receiving payments under:

   (a)  the United States Social Security Act;

   (b)  the Railroad Retirement Act;

   (c)  the Canada Pension Plan;

   (d)  the Quebec Pension Plan; or

   (e)  any similar plan or act.

Benefits paid to your former spouse or to your children living with such spouse will not be included.

5.  The amount that you:

   (a)  receive as disability payments under your Employer's *retirement plan*;

   (b)  voluntarily elect to receive as retirement or early retirement payments under your Employer's retirement plan; or

   (c)  receive as retirement payments when you reach normal retirement age, as defined in your Employer's retirement plan.

Disability payments under a retirement plan will be those benefits which are paid due to disability and do not reduce the retirement benefits which would have been paid if the disability had not occurred.

Retirement payments will be those benefits which are paid based on your Employer's contribution to the retirement plan. Disability benefits which reduce the retirement benefits under the plan will also be considered as a retirement benefit.

Amounts received do not include amounts rolled over or transferred to any eligible retirement plan. Prudential will use the definition of eligible retirement plan as defined in Section 402 of the Internal Revenue Code including any future amendments which affect the definition.

6.  The amount you receive under the maritime doctrine of maintenance, wages and cure. This includes only the "wages" part of such benefits.

83500
CBI-LTD-1057 (as modified by GRP 99545-7)                                    (41356-9)

7.   The amount that you receive from a partnership, proprietorship or any similar draws.

8.   The amount that you receive, due to your disability, from a third party (after subtracting attorney's fees) by judgment, settlement or otherwise.

With the exception of retirement payments, or amounts that you receive from a partnership, proprietorship or any similar draws, Prudential will only subtract deductible sources of income which are payable as a result of the same disability.

We will not reduce your payment by your Social Security income if your disability begins after age 65 and you were already receiving Social Security retirement payments.

*Law, plan or act* means the original enactment of the law, plan or act and all amendments.

*Retirement plan* means a defined contribution plan or defined benefit plan. These are plans which provide retirement benefits to employees and are not funded entirely by employee contributions.

## What Are Not Deductible Sources of Income?

Prudential will not deduct from your gross disability payment income you receive from, but not limited to, the following sources:

- 401(k) plans;

- profit sharing plans;

- thrift plans;

- tax sheltered annuities;

- stock ownership plans;

- non-qualified plans of deferred compensation;

- pension plans for partners;

- military pension and disability income plans;

- credit disability insurance;

- franchise disability income plans;

- a retirement plan from another Employer;

- individual retirement accounts (IRA).

## What If Subtracting Deductible Sources of Income Results in a Zero Benefit? (Minimum Benefit)

The minimum monthly payment is $100.00.

Prudential may apply this amount toward an outstanding overpayment.

83500
CBI-LTD-1057 (as modified by GRP 99545-7)

(41356-9)

## What Happens When You Receive a Cost of Living Increase from Deductible Sources of Income?

Once Prudential has subtracted any deductible source of income from your gross disability payment, Prudential will not further reduce your payment due to a cost of living increase from that source.

## What If Prudential Determines that You May Qualify for Deductible Income Benefits?

If we determine that you may qualify for benefits under item 1, 2 or 3 in the deductible sources of income section, we will estimate your entitlement to these benefits. We can reduce your payment by the estimated amount if such benefits have not been awarded.

However, we will NOT reduce your payment by the estimated amount under item 1, 2 or 3 in the deductible sources of income section if you:

- apply for the benefits;

- appeal any denial to all administrative levels Prudential feels are necessary; and

- sign Prudential's Reimbursement Agreement form. This form states that you promise to pay us any overpayment caused by an award.

If your payment has been reduced by an estimated amount, your payment will be adjusted when we receive proof:

- of the amount awarded; or

- that benefits have been denied and all appeals Prudential feels are necessary have been completed. In this case, a lump sum refund of the estimated amount will be made to you.

## What Happens If You Receive a Lump Sum Payment?

If you receive a lump sum payment from any deductible source of income, the lump sum will be pro-rated on a monthly basis over the time period for which the sum was given. If no time period is stated, we will use a reasonable one.

## How Long Will Prudential Continue to Send You Payments?

Prudential will send you a payment each month up to the *maximum period of payment*. Your maximum period of payment is:

| Your Age on Date Disability Begins | Your Maximum Period of Benefits |
|---|---|
| Under age 61 | To your normal retirement age*, but not less than 60 months |
| Age 61 | To your normal retirement age*, but not less than 48 months |
| Age 62 | To your normal retirement age*, but not less than 42 months |
| Age 63 | To your normal retirement age*, but not less than 36 months |
| Age 64 | To your normal retirement age*, but not less than 30 months |
| Age 65 | 24 months |
| Age 66 | 21 months |

83500
CBI-LTD-1057 (as modified by GRP 99545-7)                              (41356-9)

| | |
|---|---|
| Age 67 | 18 months |
| Age 68 | 15 months |
| Age 69 and over | 12 months |

**\*Your normal retirement age is your retirement age under the Social Security Act where retirement age depends on your year of birth.**

We will stop sending you payments and your claim will end on the earliest of the following:

1.  When you are able to work in your regular occupation on a *part-time basis* but you choose not to.

2.  The end of the maximum period of payment.

3.  The date you are no longer disabled under the terms of the plan.

4.  The date you fail to submit proof of continuing disability satisfactory to Prudential.

5.  The date your disability earnings exceed the amount allowable under the plan.

6.  The date you die.

7.  The date you decline to participate in a rehabilitation program that Prudential considers appropriate for your situation and that is approved by your doctor.

*Maximum period of payment* means the longest period of time Prudential will make payments to you for any one period of disability.

*Part-time basis* means the ability to work and earn 20% or more of your indexed monthly earnings.

## What Disabilities Have a Limited Pay Period Under Your Plan?

Disabilities due to a sickness or injury which, as determined by Prudential, are primarily based on *self-reported symptoms* have a limited pay period during your lifetime.

Disabilities which, as determined by Prudential, are due in whole or part to *mental illness* also have a limited pay period during your lifetime.

The limited pay period for self-reported symptoms and mental illness combined is 24 months during your lifetime.

Prudential will continue to send you payments for disabilities due in whole or part to mental illness beyond the 24 month period if you meet one or both of these conditions:

1.  If you are *confined* to a *hospital or institution* at the end of the 24 month period, Prudential will continue to send you payments during your *confinement*.

    If you are still disabled when you are discharged, Prudential will send you payments for a recovery period of up to 90 days.

    If you become reconfined at any time during the recovery period and remain confined for at least 14 days in a row, Prudential will send payments during that additional confinement and for one additional recovery period up to 90 more days.

2.    In addition to item 1, if, after the 24 month period for which you have received payments, you continue to be disabled and subsequently become confined to a hospital or institution for at least 14 days in a row, Prudential will send payments during the length of the confinement.

Prudential will not pay beyond the limited pay period as indicated above, or the maximum period of payment, whichever occurs first.

Prudential will not apply the mental illness limitation to dementia if it is a result of:

- stroke;

- trauma;

- viral infection;

- Alzheimer's disease; or

- other conditions not listed which are not usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment as standardly accepted in the practice of medicine.

*Self-reported symptoms* means the manifestations of your condition, which you tell your doctor, that are not verifiable using tests, procedures and clinical examinations standardly accepted in the practice of medicine. Examples of self-reported symptoms include, but are not limited to headache, pain, fatigue, stiffness, soreness, ringing in ears, dizziness, numbness and loss of energy.

*Mental illness* means a psychiatric or psychological condition regardless of cause. Mental illness includes but is not limited to schizophrenia, depression, manic depressive or bipolar illness, anxiety, somatization, substance related disorders and/or adjustment disorders or other conditions. These conditions are usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment as standardly accepted in the practice of medicine.

*Confined or confinement* for this section means a hospital stay of at least 8 hours per day.

*Hospital or institution* means an accredited facility licensed to provide care and treatment for the condition causing your disability.

## What Disabilities Are Not Covered Under Your Plan?

Your plan does not cover any disabilities caused by or resulting from your:

- intentionally self-inflicted injuries;

- active participation in a riot; or

- commission of a crime for which you have been convicted under state or federal law.

Your plan does not cover a disability which:

- begins within 12 months of the date your coverage under the plan becomes effective; and

- is due to a pre-existing condition.

Your plan does not cover a disability due to war, declared or undeclared, or any act of war.

83500
CBI-LTD-1057 (as modified by GRP 99545-7)                                              (41356-9)

Prudential will not make a payment for any period of disability during which you are incarcerated as a result of a conviction.

## What Is a Pre-Existing Condition?

You have a pre-existing condition if:

1.  You received medical treatment, consultation, care or services including diagnostic measures, took prescribed drugs or medicines, or followed treatment recommendation in the 3 months just prior to your effective date of coverage or the date an increase in benefits would otherwise be available; or

2.  You had symptoms for which an ordinarily prudent person would have consulted a health care provider in the 3 months just prior to your effective date of coverage or the date an increase in benefits would otherwise be available.

## How Does a Pre-Existing Condition Affect an Increase in Your Benefits?

If there is an increase in your benefits due to an amendment of the plan; or your enrollment in another plan option, a benefit limit will apply if your disability is due to a pre-existing condition.

You will be limited to the benefits you had on the day before the increase if your disability begins during the 12 month period starting with the date the increase in benefits would have been effective. The increase will not take effect until your disability ends.

## How Does the Pre-Existing Condition Work If You Were Covered Under Your Employer's Prior Plan?

Special rules apply to pre-existing conditions, if this long term disability plan replaces your Employer's prior plan and:

- you were covered by that plan on the day before this plan became effective; and

- you became covered under this plan within thirty-one days of its effective date.

The special rules are:

1.  If the Employer's prior plan did not have a pre-existing condition exclusion or limitation, then a pre-existing condition will not be excluded or limited under this plan.

2.  If the Employer's prior plan did have a pre-existing condition exclusion or limitation, then the limited time does not end after the first 12 months of coverage. Instead it will end on the date any equivalent limit would have ended under the Employer's prior plan.

3.  If the change from your Employer's prior plan to this plan of coverage would result in an increase in your amount of benefits, the benefits for your disability that is due to a pre-existing sickness or injury will not increase. Instead the benefits are limited to the amount you had on the day before the plan change.

GRP 99545-7

## What Happens If You Return to Work Full Time and Your Disability Occurs Again?

If you have a *recurrent disability*, as determined by Prudential, we will treat your disability as part of your prior claim and you will not have to complete another elimination period if:

- you were continuously insured under this plan for the period between your prior claim and your current disability; and

- your recurrent disability occurs within 6 months of the end of your prior claim.

Your recurrent disability will be subject to the same terms of the plan as your prior claim. Any disability which occurs after 6 months from the date your prior claim ended will be treated as a new claim. The new claim will be subject to all of the plan provisions.

If you become covered under any other group long term disability plan, you will not be eligible for payments under the Prudential plan.

*Recurrent disability* means a disability which is:

- caused by a worsening in your condition; and

- due to the same cause(s) as your prior disability for which Prudential made a Long Term Disability payment.

# Long Term Disability Coverage

## OTHER BENEFIT FEATURES

### What Benefits Will be Provided to Your Family If You Die? (Survivor Benefit)

When Prudential receives proof that you have died, we will pay your *eligible survivor* a lump sum benefit equal to 3 months of your gross disability payment if, on the date of your death:

- your disability had continued for 180 or more consecutive days; and

- you were receiving or were entitled to receive payments under the plan.

If you have no eligible survivors, payment will be made to your estate.

However, we will first apply the survivor benefit to any overpayment which may exist on your claim.

*Eligible survivor* means your spouse, if living; otherwise, your children under age 25.

# Long Term Disability Coverage

## CLAIM INFORMATION

### When Do You Notify Prudential of a Claim?

We encourage you to notify us of your claim as soon as possible, so that a claim decision can be made in a timely manner. Written notice of a claim should be sent within 30 days after the date your disability begins. However, you must send Prudential written proof of your claim no later than 90 days after your elimination period ends. If it is not possible to give proof within 90 days, it must be given no later than 1 year after the time proof is otherwise required except in the absence of legal capacity.

The claim form is available from your Employer, or you can request a claim form from us. If you do not receive the form from Prudential within 15 days of your request, send Prudential written proof of claim without waiting for the form.

You must notify us immediately when you return to work in any capacity.

### How Do You File a Claim?

You and your Employer must fill out your own section of the claim form and then give it to your attending doctor. Your doctor should fill out his or her section of the form and send it directly to Prudential.

### What Information Is Needed as Proof of Your Claim?

Your proof of claim, provided at your expense, must show:

1. That you are under the *regular care* of a *doctor*.

2. The appropriate documentation of your monthly earnings.

3. The date your disability began.

4. Appropriate documentation of the disabling disorder.

5. The extent of your disability, including restrictions and limitations preventing you from performing your regular occupation.

6. The name and address of any *hospital or institution* where you received treatment, including all attending doctors.

7. The name and address of any doctor you have seen.

We may request that you send proof of continuing disability, satisfactory to Prudential, indicating that you are under the regular care of a doctor. This proof, provided at your expense, must be received within 30 days of a request by us.

In some cases, you will be required to give Prudential authorization to obtain additional medical information, and to provide non-medical information as part of your proof of claim, or proof of continuing disability. Prudential will deny your claim or stop sending you payments if the appropriate information is not submitted.

---

*Regular care* means:

- you personally visit a doctor as frequently as is medically required, according to generally accepted medical standards, to effectively manage and treat your disabling condition(s); and

- you are receiving the most appropriate treatment and care, which conforms with generally accepted medical standards, for your disabling condition(s) by a doctor whose specialty or experience is the most appropriate for your disabling condition(s), according to generally accepted medical standards.

*Doctor* means:

a person who is performing tasks that are within the limits of his or her medical license; and

- is licensed to practice medicine and prescribe and administer drugs or to perform surgery; or

- has a doctoral degree in Psychology (Ph.D. or Psy.D.) whose primary practice is treating patients; or

- is a legally qualified medical practitioner according to the laws and regulations of the governing jurisdiction.

Prudential will not recognize any relative including, but not limited to, you, your spouse, or a child, brother, sister, or parent of you or your spouse as a doctor for a claim that you send to us.

*Hospital or institution* means an accredited facility licensed to provide care and treatment for the condition causing your disability.

---

## Who Will Prudential Make Payments To?

Prudential will make payments to you.

## What Happens If Prudential Overpays Your Claim?

Prudential has the right to recover any overpayments due to:

- fraud;

- any error Prudential makes in processing a claim; and

- your receipt of deductible sources of income.

You must reimburse us in full. We will determine the method by which the repayment is to be made.

Prudential will not recover more money than the amount we paid you.

83500
CCLM-LTD-1001

(S-3)

## What Are the Time Limits for Legal Proceedings?

You can start legal action regarding your claim 60 days after proof of claim has been given and up to 3 years from the time proof of claim is required, unless otherwise provided under federal law.

## How Will Prudential Handle Insurance Fraud?

Prudential wants to ensure you and your Employer do not incur additional insurance costs as a result of the undermining effects of insurance fraud. Prudential promises to focus on all means necessary to support fraud detection, investigation and prosecution.

In some jurisdictions, if you knowingly and with intent to defraud Prudential, file an application or a statement of claim containing any materially false information or conceal for the purpose of misleading, information concerning any fact material thereto, you commit a fraudulent insurance act, which is a crime and subjects you to criminal and civil penalties. These actions will result in denial or termination of your claim, and, where such laws apply, are subject to prosecution and punishment to the full extent under any applicable law. Prudential will pursue all appropriate legal remedies in the event of insurance fraud.

# Long Term Disability Coverage

## OTHER SERVICES

### How Can Prudential Help Your Employer Identify and Provide Worksite Modification?

A worksite modification might be what is needed to allow you to perform the material and substantial duties of your regular occupation with your Employer. One of our designated professionals will assist you and your Employer to identify a modification we agree is likely to help you remain at work or return to work. This agreement will be in writing and must be signed by you, your Employer and Prudential.

When this occurs, Prudential will reimburse your Employer for the cost of the modification up to the greater of:

- $1,000; or

- the equivalent of 2 months of your monthly benefit.

This benefit is available to you on a one time only basis.

### How Can Prudential's Social Security Claimant Assistance Program Help You With Obtaining Social Security Disability Benefits?

Prudential can arrange for expert advice regarding your Social Security disability benefits claim and assist you with your application or appeal, if you are disabled under the plan.

Receiving Social Security disability benefits may enable:

- you to receive Medicare after 24 months of disability payments;

- you to protect your retirement benefits; and

- your family to be eligible for Social Security benefits.

We can assist you in obtaining Social Security disability benefits by:

- helping you find appropriate legal representation;

- obtaining medical and vocational evidence; and

- reimbursing pre-approved case management expenses.

# Long Term Disability Coverage

## OTHER SERVICES

### How Can Prudential's Rehabilitation Program Help You Return to Work?

Prudential has a *rehabilitation program* available.

As your file is reviewed, medical and vocational information will be analyzed to determine if rehabilitation services might help you return to work.

Once the initial review is completed by our rehabilitation program specialists working along with your doctor and other appropriate specialists, Prudential may elect to offer you and pay for a rehabilitation program. If the rehabilitation program is not developed by Prudential's rehabilitation program specialists, you must receive written approval from Prudential for the program before it begins.

The rehabilitation program may include, but is not limited to, the following services:

- coordination with your Employer to assist you to return to work;

- evaluation of adaptive equipment to allow you to work;

- vocational evaluation to determine how your disability may impact your employment options;

- job placement services;

- resume preparation;

- job seeking skills training;

- retraining for a new occupation; or

- assistance with relocation that may be part of an approved rehabilitation program.

If at any time, you decline to take part in or cooperate in a rehabilitation evaluation/assessment or program that Prudential feels is appropriate for your disability and that has been approved by your Doctor, we will cease paying your monthly benefit.

*Rehabilitation program* means a program designed to assist you to return to work.

# Glossary

***Active employment*** means you are working for your Employer for earnings that are paid regularly and that you are performing the material and substantial duties of your regular occupation. You must be working at least 30 hours per week.

Your worksite must be:

- your Employer's usual place of business;

- an alternate work site at the direction of your Employer other than your home unless clear specific expectations and duties are documented; or

- a location to which your job requires you to travel.

Normal vacation is considered active employment.

Temporary and seasonal workers are excluded from coverage.

Individuals whose employment status is being continued under a severance or termination agreement will not be considered in active employment.

***Confined or confinement*** for this section means a hospital stay of at least 8 hours per day.

***Contract holder*** means the Employer to whom the Group Contract is issued.

***Deductible sources of income*** means income from deductible sources listed in the plan that you receive or are entitled to receive while you are disabled. This income will be subtracted from your gross disability payment.

***Disability earnings*** means the earnings which you receive while you are disabled and working, plus the earnings you could receive if you were working to your greatest extent possible as explained in the plan. Salary continuance will not be included as disability earnings since it is not payment for work performed.

***Doctor*** means:

a person who is performing tasks that are within the limits of his or her medical license; and

- is licensed to practice medicine and prescribe and administer drugs or to perform surgery; or

- has a doctoral degree in Psychology (Ph.D. or Psy.D.) whose primary practice is treating patients; or

- is a legally qualified medical practitioner according to the laws and regulations of the governing jurisdiction.

Prudential will not recognize any relative including but not limited to you, your spouse, or a child, brother, sister, or parent of you or your spouse as a doctor for a claim that you send to us.

***Eligible survivor*** means your spouse, if living; otherwise, your children under age 25.

***Elimination period*** means a period of continuous disability which must be satisfied before you are eligible to receive benefits from Prudential.

83500
CGL-1001 (as modified by GRP 99648-4 and GRP 99872)

(41356-9)

*Employee* means a person who is in active employment with the Employer for the minimum hours requirement.

*Employer* means the Contract Holder, and includes any division, subsidiary or affiliate who is reported to Prudential in writing for inclusion under the Group Contract, provided that Prudential has approved such request.

*Employment waiting period* means the continuous period of time that you must be in a covered class before you are eligible for coverage under a plan  The period must be agreed upon by the Employer and Prudential.

*Evidence of insurability* means a statement of your medical history which Prudential will use to determine if you are approved for coverage.  Evidence of Insurability will be provided at your own expense.

*Gross disability payment* means the benefit amount before Prudential subtracts deductible sources of income and disability earnings.

*Hospital or institution* means an accredited facility licensed to provide care and treatment for the condition causing your disability.

*Indexed monthly earnings* means your monthly earnings as adjusted on each July 1 provided you were disabled for all of the 12 months before that date.  Your monthly earnings will be adjusted on that date by the lesser of 10% or the current annual percentage increase in the Consumer Price Index.  Your indexed monthly earnings may increase or remain the same, but will never decrease.

The Consumer Price Index (CPI-W) is published by the U.S. Department of Labor.  Prudential reserves the right to use some other similar measurement if the Department of Labor changes or stops publishing the CPI-W.

Indexing is only used to determine your percentage of lost earnings while you are disabled and working.

*Injury* means a bodily injury that is the direct result of an accident, is independent of sickness, and occurs while you are covered under the plan.  Injury which occurs before you are covered under the plan will be treated as a sickness.  Disability must begin while you are covered under the plan.

*Insured* means any person covered under a coverage.

*Law, plan or act* means the original enactment of the law, plan or act and all amendments.

*Layoff or leave of absence* means you are temporarily absent from active employment for a period of time that has been agreed to in advance in writing by your Employer, other than for reasons in connection with any severance or termination agreement.  Your normal vacation time, any period of disability or FMLA leave is not considered a temporary layoff.

*Material and substantial duties* means duties that:

- are normally required for the performance of your regular occupation; and

- cannot be reasonably omitted or modified, except that if you are required to work on average in excess of 40 hours per week, Prudential will consider you able to perform that requirement if you are working or have the capacity to work 40 hours per week.

*Maximum period of payment* means the longest period of time Prudential will make payments to you for any one disability.

83500
CGL-1001 (as modified by GRP 99648-4 and GRP 99872)

(41356-9)

*Mental illness* means a psychiatric or psychological condition regardless of cause.  Mental illness includes but is not limited to schizophrenia, depression, manic depressive, or bipolar illness, anxiety, somatization, substance related disorders, and/or adjustment disorders or other conditions.  These conditions are usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment as standardly accepted in the practice of medicine.

*Monthly benefit* means the total benefit amount for which an employee is insured under this plan subject to the maximum benefit.

*Monthly earnings* means your gross monthly income from your Employer as defined in the plan.

*Monthly payment* means your payment after any deductible sources of income have been subtracted from your gross disability payment.

*Part-time basis (LTD)* means the ability to work and earn 20% or more of your indexed monthly earnings.

*Payable claim* means a claim for which Prudential is liable under the terms of the Group Contract.

*Plan* means a line of coverage under the Group Contract.

*Pre-existing condition* means:

a condition for which you received medical treatment, consultation, care or services including diagnostic measures, took prescribed drugs or medicines or followed treatment recommendation for your condition during the given period of time as stated in the plan; or

you had symptoms for which an ordinarily prudent person would have consulted a health care provider during the given period of time as stated in the plan.

*Recurrent disability* means a disability which is:

* caused by a worsening in your condition; and

* due to the same cause(s) as your prior disability for which Prudential made a Long Term Disability payment.

*Regular care* means:

* you personally visit a doctor as frequently as is medically required, according to generally accepted medical standards, to effectively manage and treat your disabling condition(s); and

* you are receiving the most appropriate treatment and care, which conforms with generally accepted medical standards, for your disabling condition(s) by a doctor whose specialty or experience is the most appropriate for your disabling condition(s), according to generally accepted medical standards.

*Regular occupation* means the occupation you are routinely performing when your disability occurs. Prudential will look at your occupation as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location.

*Rehabilitation program* means a program designed to assist you to return to work.

*Retirement plan* means a defined contribution plan or defined benefit plan.  These are plans which provide retirement benefits to employees and are not funded entirely by employee contributions.

83500
CGL-1001 (as modified by GRP 99648-4 and GRP 99872)

(41356-9)

*Self-reported symptoms* means the manifestations of your condition, which you tell your doctor, that are not verifiable using tests, procedures and clinical examinations standardly accepted in the practice of medicine.  Examples of self-reported symptoms include, but are not limited to headache, pain, fatigue, stiffness, soreness, ringing in ears, dizziness, numbness and loss of energy.

*Sickness* means any disorder of your body or mind, but not an injury; pregnancy including abortion, miscarriage or childbirth.  Disability must begin while you are covered under the plan.

*We, us, and our* means The Prudential Insurance Company of America.

*You* means a person who is eligible for Prudential coverage.

# SUMMARY PLAN DESCRIPTION

This booklet is intended to comply with the disclosure requirements of the regulations issued by the U.S. Department of Labor under the Employee Retirement Income Security Act (ERISA) of 1974. ERISA requires that you be given a "Summary Plan Description" which describes the plan and informs you of your rights under it.

**Plan Name**

Long Term Disability Coverage for All Employees classified by the contract holder as Officers, Directors, General Managers, and their management level direct reports located in United States of CCL Custom Manufacturing, Inc.

**Plan Number**

501

**Type of Plan**

Employee Welfare Benefit Plan

**Plan Sponsor**

CCL Custom Manufacturing, Inc.
6133 N. River Rd. Suite 800
Rosemont, Illinois  60018

**Employer Identification Number**

74-1786602

**Plan Administrator**

CCL Custom Manufacturing, Inc.
Attention:  Human Resources Department
6133 N. River Rd. Suite 800
Rosemont, Illinois  60018

**Agent for Service of Legal Process**

CCL Custom Manufacturing, Inc.
Attention:  Human Resources Department
6133 N. River Rd. Suite 800
Rosemont, Illinois  60018

**Plan Year Ends**

August 31

**Plan Benefits Provided by**

The Prudential Insurance Company of America
Prudential Plaza
Newark, New Jersey  07102

SPD

(41356-9)

This Group Contract underwritten by The Prudential Insurance Company of America provides insured benefits under your Employer's ERISA plan(s). The Prudential Insurance Company of America as Claims Administrator has the sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits. The decision of the Claims Administrator shall not be overturned unless arbitrary and capricious.

**Loss of Benefits**

You must continue to be a member of the class to which this plan pertains and continue to make any of the contributions agreed to when you enroll. Failure to do so may result in partial or total loss of your benefits. It is intended that this plan will be continued for an indefinite period of time. But, the employer reserves the right to change or terminate the plan. This booklet describes your rights upon termination of the plan.

**Claim Procedures**

1.  **Determination of Benefits**

    Prudential shall notify you of the claim determination within 45 days of the receipt of your claim. This period may be extended by 30 days if such an extension is necessary due to matters beyond the control of the plan. A written notice of the extension, the reason for the extension and the date by which the plan expects to decide your claim, shall be furnished to you within the initial 45-day period. This period may be extended for an additional 30 days beyond the original 30-day extension if necessary due to matters beyond the control of the plan. A written notice of the additional extension, the reason for the additional extension and the date by which the plan expects to decide on your claim, shall be furnished to you within the first 30-day extension period if an additional extension of time is needed. However, if a period of time is extended due to your failure to submit information necessary to decide the claim, the period for making the benefit determination by Prudential will be tolled from the date on which the notification of the extension is sent to you until the date on which you respond to the request for additional information.

    If your claim for benefits is denied, in whole or in part, you or your authorized representative will receive a written notice from Prudential of your denial. The notice will be written in a manner calculated to be understood by you and shall include:

    (a)  the specific reason(s) for the denial,

    (b)  references to the specific plan provisions on which the benefit determination was based,

    (c)  a description of any additional material or information necessary for you to perfect a claim and an explanation of why such information is necessary,

    (d)  a description of the Prudential's appeals procedures and applicable time limits, including a statement of your right to bring a civil action under section 502(a) of ERISA following your appeals, and

    (e)  if an adverse benefit determination is based on a medical necessity or experimental treatment or similar exclusion or limit, an explanation of the scientific or clinical judgment for the determination will be provided free of charge upon request.

SPD

(41356-9)

2.    **Appeals of Adverse Determination**

If your claim for benefits is denied or if you do not receive a response to your claim within the appropriate time frame (in which case the claim for benefits is deemed to have been denied), you or your representative may appeal your denied claim in writing to Prudential within 180 days of the receipt of the written notice of denial or 180 days from the date such claim is deemed denied. You may submit with your appeal any written comments, documents, records and any other information relating to your claim. Upon your request, you will also have access to, and the right to obtain copies of, all documents, records and information relevant to your claim free of charge.

A full review of the information in the claim file and any new information submitted to support the appeal will be conducted by the Prudential Appeals Review Unit. The claim decision will be made by a member of the Prudential Claims Management Team. The Prudential Appeals Review Unit and Claims Management Team members are made up of individuals not involved in the initial benefit determination. This review will not afford any deference to the initial benefit determination.

The Prudential Appeals Review Unit shall make a determination on your claim appeal within 45 days of the receipt of your appeal request. This period may be extended by up to 90 days if Prudential determines that special circumstances require an extension of time. A written notice of the extension, the reason for the extension and the date that the Prudential Appeals Review Unit expects to render a decision shall be furnished to you within the initial 45-day period. However, if the period of time is extended due to your failure to submit information necessary to decide the appeal, the period for making the benefit determination will be tolled from the date on which the notification of the extension is sent to you until the date on which you respond to the request for additional information.

If the claim on appeal is denied in whole or in part, you will receive a written notification from Prudential of the denial. The notice will be written in a manner calculated to be understood by the applicant and shall include:

(a)    the specific reason(s) for the adverse determination,

(b)    references to the specific plan provisions on which the determination was based,

(c)    a statement that you are entitled to receive upon request and free of charge reasonable access to, and make copies of, all records, documents and other information relevant to your benefit claim upon request,

(d)    a description of Prudential's review procedures and applicable time limits,

(e)    a statement that you have the right to obtain upon request and free of charge, a copy of internal rules or guidelines relied upon in making this determination, and

(f)    a statement describing any appeals procedures offered by the plan, and your right to bring a civil suit under ERISA.

If a decision on appeal is not furnished to you within the time frames mentioned above, the claim shall be deemed denied on appeal.

If the appeal of your benefit claim is denied or if you do not receive a response to your appeal within the appropriate time frame (in which case the appeal is deemed to have been denied), you or your representative may make a second appeal of your denial in writing to Prudential within 180 days of the receipt of the written notice of denial or 180 days from the date such claim is deemed denied. You may submit with your second appeal any written comments, documents, records and any other information relating to your claim. Upon your request, you will also have access to, and the right to obtain copies of, all documents, records and information relevant to your claim free of charge.

Upon receipt of a second appeal, the Prudential Appeals Review Unit will again conduct a full review of the claim file and any additional information submitted. The claim decision will be made by a member of the Prudential Senior Claims Management Team. The Appeals Unit and Senior Claims Management Team member would not have been involved in the initial benefit determination or in the first appeal.

The Prudential Appeals Review Unit shall make a determination on your second claim appeal within 45 days of the receipt of your appeal request. This period may be extended by up to 90 days if Prudential determines that special circumstances require an extension of time. A written notice of the extension, the reason for the extension and the date by which the Appeals Review Unit expects to render a decision shall be furnished to you within the initial 45-day period. However, if the period of time is extended due to your failure to submit information necessary to decide the appeal, the period for making the benefit determination will be tolled from the date on which the notification of the extension is sent to you until the date on which you respond to the request for additional information.

If the claim on appeal is denied in whole or in part for a second time, you will receive a written notification from Prudential of the denial. The notice will be written in a manner calculated to be understood by the applicant and shall include the same information that was included in the first adverse determination letter as well as your right to appeal the decision to Prudential's Appeal Committee. If a decision on appeal is not furnished to you within the time frames mentioned above, the claim shall be deemed denied upon appeal.

If the second appeal of your benefit claim is denied or if you do not receive a response to your second appeal within the appropriate time frame (in which case the appeal is deemed to have been denied), you or your authorized representative may make a third appeal of your denial in writing to the Prudential Appeals Committee within 180 days of the receipt of the written notice of denial or 180 days from the date such claim is deemed denied. You may submit with your third appeal any written comments, documents, records and any other information relating to your claim. Upon your request, you will also have access to, and the right to obtain copies of, all documents, records and information relevant to your claim free of charge.

Upon receipt of a third appeal, the claim will be directed to Prudential's Appeals Committee by a member of the Prudential Senior Claims Management Team. This Committee will be composed of three members of the Senior Claims Management Team who have not been involved in any previous appeals.

The Prudential Appeals Committee shall make a determination on your third claim appeal within 45 days of the receipt of your appeal request. This period may be extended by up to 90 days if Prudential determines that special circumstances require an extension of time. A written notice of the extension, the reason for the extension and the date by which the Appeals Review Unit expects to render a decision shall be furnished to you within the initial 45-day period. However, if the period of time is extended due to your failure to submit information necessary to decide the appeal, the period for making the benefit determination will be tolled from the date on which the notification of the extension is sent to you until the date on which you respond to the request for additional information.

Your decision to submit a benefit dispute to the third level of appeal has no effect on your right to any other benefits under this plan. If you elect to initiate a lawsuit without submitting to a third level of appeal, the plan waives any right to assert that you failed to exhaust administrative remedies. If you elect to submit the dispute to the third level of appeal, the plan agrees that any statute of limitations or other defense based on timeliness is tolled during the time that the appeal is pending.

If the claim on appeal is denied in whole or in part for a third time, you will receive a written notification from Prudential of the denial. The notice will be written in a manner calculated to be understood by the applicant and shall include the same information that was included in the first adverse determination letter. If a decision on appeal is not furnished to you within the time frames mentioned above, the claim shall be deemed denied on appeal.

## Rights and Protections

As a participant in this plan, you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA provides that all plan participants shall be entitled to:

### Receive Information about Your Plan and Benefits

- Examine, without charge, at the plan administrator's office and at other specified locations, such as worksites and union halls, all documents governing the plan, including insurance contracts and collective bargaining agreements, and a copy of the latest annual report (Form 5500 Series) filed by the plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Pension and Welfare Benefit Administration.

- Obtain, upon written request to the plan administrator, copies of documents governing the operation of the plan, including insurance contracts and collective bargaining agreements, and copies of the latest annual report (Form 5500 Series) and updated summary plan description. The plan administrator may make a reasonable charge for the copies.

- Receive a summary of the plan's annual financial report. The plan administrator is required by law to furnish each participant with a copy of this summary annual report.

### Prudent Actions by Plan Fiduciaries

In addition to creating rights for plan participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who operate your plan, called "fiduciaries" of the plan, have a duty to do so prudently and in the interest of you and other plan participants and beneficiaries. No one, including your employer, your union, or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a welfare benefit or exercising your rights under ERISA.

**Enforce Your Rights**

If your claim for a welfare benefit is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules.

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of plan documents or the latest annual report from the plan and do not receive them within 30 days, you may file suit in a Federal court. In such a case, the court may require the plan administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the administrator. If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or Federal court. If it should happen that plan fiduciaries misuse the plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a Federal court. The court will decide who should pay court costs and legal fees. If you are successful, the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

**Assistance with Your Questions**

If you have any questions about your plan, you should contact the plan administrator. If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the plan administrator, you should contact the nearest office of the Pension and Welfare Benefits Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Pension and Welfare Benefits Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, DC 20210. You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Pension and Welfare Benefits Administration.

SPD

(41356-9)

March 11, 2008     TG

08cv1444

Judge DOW Jr.

Magistrate Judge VALDEZ

# SOCIAL SECURITY ADMINISTRATION
## Office of Disability Adjudication and Review

## DECISION

| **IN THE CASE OF** | **CLAIM FOR** |
|---|---|
| | Period of Disability and Disability Insurance Benefits |
| Alvin Louis Hintz Jr. | |
| (Claimant) | |
| | 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 |
| (Wage Earner) | (Social Security Number) |

## JURISDICTION AND PROCEDURAL HISTORY

On March 10, 2006, the claimant filed an application for a period of disability and disability insurance benefits, alleging disability beginning August 8, 2005. This claim was denied and is now before the undersigned Administrative Law Judge on a timely written request for hearing filed on September 12, 2006 (20 CFR 404.929 *et seq.*). The evidence of record supports a fully favorable decision; therefore no hearing has been held (20 CFR 404.948(a)). The claimant is represented by David A. Tuggle, an attorney.

## ISSUES

The issue is whether the claimant is disabled under sections 216(i) and 223(d) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

There is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met. The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through December 31, 2010. Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

After careful review of the entire record, the undersigned finds that the claimant has been disabled from August 8, 2005 through the date of this decision. The undersigned also finds that the insured status requirements of the Social Security Act were met as of the date disability is established.

## APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 404.1520(a)). The steps are followed in order. If it is determined that the

claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the undersigned must determine whether the claimant is engaging in substantial gainful activity (20 CFR 404.1520(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 404.1572(a)). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 404.1572(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA (20 CFR 404.1574 and 404.1575). If an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, and work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1521; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, the undersigned must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526). If the claimant's impairment or combination of impairments meets or medically equals the criteria of a listing and meets the duration requirement (20 CFR 404.1509), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the undersigned must first determine the claimant's residual functional capacity (20 CFR 404.1520(e)). An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. In making this finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e) and 404.1545; SSR 96-8p).

Next, the undersigned must determine at step four whether the claimant has the residual functional capacity to perform the requirements of his past relevant work (20 CFR 404.1520(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b) and

404.1565). If the claimant has the residual functional capacity to do his past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 404.1520(g)), the undersigned must determine whether the claimant is able to do any other work considering his residual functional capacity, age, education, and work experience. If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and meets the duration requirement, he is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 404.1512(g) and 404.1560(c)).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, the undersigned makes the following findings:

1. **The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.**

2. **The claimant has not engaged in substantial gainful activity since August 8, 2005, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).**

3. **The claimant has the following severe impairments: coronary artery disease, congestive heart failure, hypertension, diabetes mellitus, hyperlipidemia and obstructive sleep apnea (20 CFR 404.1520(c)).**

The above impairments cause significant limitation in the claimant's ability to perform basic work activities.

4. **The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d)).**

5. **After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform work that requires the ability to lift and carry up to 10 pounds occasionally, to stand and walk occasionally and to sit and work for most of the work day. The work should require no more than occasional climbing of ramps or satires, balancing, stooping, kneeling, crouching or crawling and no climbing of ladders, ropes or scaffolds. The work should avoid even moderate exposure to extreme cold, heat or hazards, such as machinery or heights.**

In making this finding, the undersigned considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p and 96-6p.

The medical evidence documents that Mr. Hintz has a history of multiple medical conditions. The claimant reported at the time he initiated his claim for disability benefits that he had no energy, and he had trouble breathing. Mr. Hintz stated that he was under constant concern over heart failure and he was very weak.

Dr. Smith-Caillouet reported upon follow-up with the claimant on April 5, 2006 that Mr. Hintz had four recent hospitalizations in the previous 30 days. He had congestive heart failure. He subsequently underwent a cardiac catheterization, which showed significant coronary pathology and had a stent placed. He was placed on Plavix therapy and then had a transient ischemic attack for which he had an extensive hospital work-up. He was subsequently hospitalized after he had micturition, hypotension and syncope. He was stable at the time of follow-up on April 5, 2006.

The claimant's treating physician, Malec Mokraoui, M.D., submitted a letter dated May 8, 2006 in support of Mr. Hintz's claim for disability benefits. Dr. Mokraoui stated that the claimant had coronary artery disease status post coronary artery bypass grafting times 3 in 1997 with cardiac catheterizations in March 2006 showing an occluded graft to the right, 95 percent stenosis to the graft to the ramus. The claimant did have a stent placed in the graft to the ramus in March 2006. The doctor opined that, although the stent was placed and would improve flow to the heart, it was not anticipated that his overall cardiac function would improve. Dr. Mokraoui stated that Mr. Hintz had multiple other medical conditions that would prevent him from returning to work, or being considered for vocational training such as hypertension, insulin type 2 diabetes, transient ischemic attacks and peripheral arterial disease with claudication.

Treatment notes from Timothy Connelly, M.D., cardiologist, dated July 11, 2006 indicated that the claimant was participating in cardiac rehabilitation. The claimant reported an irregular rhythm at times and reported being lightheaded when he was in the dark. He was not sleeping well and he reported ongoing fatigue. Dr. Connelly confirmed the diagnoses previously identified by Dr. Mokraoui in his letter dated May 8, 2006. In addition, the doctor reported recent episode of syncope with preliminary negative tilt table test and severe obstructive sleep apnea.

Upon follow-up with Dr. Lynette Smith-Caillouet on July 17, 2006 the claimant reported a recent episode when he had memory loss for four minutes. The claimant's history of hypertension was discussed, as well as the need to control his high cholesterol.

After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, and that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are generally credible.

The State Agency Medical Consultant's opinions were considered to be consistent with that found by the undersigned to the extent that they opined that the claimant could perform no greater than sedentary activity with nonexertional limitations as identified at Finding number 5 above. However, the State Agency evaluators concluded that the claimant would have transferable skills to jobs close to his previous job's description and as performed in the national economy. The undersigned does not agree with the State Agency evaluators opinions regarding transferability of skills, as the Administrative Law Judge considers that such a transfer would require more than "very little, if any, vocational adjustment required in terms of tools, work process, work setting, or the industry" as discussed at 20 CFR Pt. 404, Subpt. P, App.2 201.00(f). The undersigned also gives significant weight to the opinion of the claimant's treating doctor, Malec Mokraoui, M.D., who on May 8, 2006 stated that the claimant's overall cardiac function was not likely to improve, and this combined with his multiple other medical conditions, would likely prevent him from returning to work or being considered for vocational training.

**6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).**

The claimant has past relevant work as a computer systems manager. The claimant reported that he was sometimes required to lift greater than 50 pounds in his past job when he would lift computers, etc. Accordingly, the claimant is unable to perform past relevant work.

**7. The claimant was an individual of advanced age on the date disability is established (20 CFR 404.1563).**

**8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).**

**9. The claimant's acquired job skills do not transfer to other occupations within the residual functional capacity defined above (20 CFR 404.1568).**

The undersigned considers that a finding of transferability of skills would require more than "very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry" as set forth at 20 CFR Pt. 404, Subpt. P, App. 2 201.00 (f), which pertains to an individual of advanced age (55 or over).

**10. Considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).**

In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for

Case 1:08-cv-01444   Document 1-3   Filed 03/11/2008   Page 6 of 6

decision-making unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decision-making (SSR 85-15).

Based on a residual functional capacity for the full range of sedentary work, considering the claimant's age, education, and work experience, a finding of "disabled" is reached by direct application of Medical-Vocational Rule 201.06.

**11. The claimant has been under a "disability," as defined in the Social Security Act, from August 8, 2005 through the date of this decision (20 CFR 404.1520(g)).**

## DECISION

Based on the application for a period of disability and disability insurance benefits filed on March 10, 2006, the claimant has been disabled under sections 216(i) and 223(d) of the Social Security Act beginning on August 8, 2005.

David W. Thompson
Administrative Law Judge

OCT 2 7 2006
Date